Teitelbaum Law Group, LLC
*Attorneys for TD Bank, N.A.*
1 Barker Avenue, 3rd Floor
White Plains, New York 10601
Tel: (914) 437-7670
Email: jteitelbaum@tblawllp.com
Jay Teitelbaum, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
―――――――――――――――――――――――――X

| | |
|---|---|
| In re: | Chapter 11 |
| TSMC, INC., | Case No. 17-22702 (RDD) |
| Debtor. | |

―――――――――――――――――――――――――X

## MOTION OF TD BANK, N.A., FOR AN ORDER MODIFYING THE AUTOMATIC STAY AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105, 361, and 362(d)(1) and/or (2), and FEDERAL BANKRUPTCY RULE OF PROCEDURE 4001

TD Bank, N.A. ("**TD Bank**" or "**Movant**"), upon the accompanying affidavit of William Austin, the declaration of Jay Teitelbaum and the Memorandum of Law, moves herein (the "**Motion**") for an Order pursuant to Sections 105, 361 and 362(d)(1) and/or (2) of Title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order (i) modifying and terminating the automatic stay with respect to those certain parcels of commercial real property commonly identified as 6 Rockledge Avenue, Ossining, New York and 17 Liberty Street, Ossining, New York (together, the "**Premises**") in order to permit Movant to enforce its state law and contractual rights and remedies as against the Premises pursuant to a certain Note, Mortgage and Confession of Judgment executed by TSMC, Inc. ("**TSMC**", "**Borrower**" or "**Debtor**") and a certain decision and order dated February 14, 2017 entered in the case *TD Bank, N.A. v. TSMC,*

*Inc., Goldfish Restaurant, Inc., Anthanasios Stratigakis, Michael Casarella, Jr. and John Does #1 through #50*, Index No. 65463/2016 (the "**State Court Action**"), including but not limited to taking possession and control of the Premises and of all lease and rent payments which may be due under the Lease, proceeding to evict Goldfish Restaurant, Inc. ("**Goldfish**") from the Premises, and; and (ii) granting Movant such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

1. The only purpose for filing this bankruptcy case and the accompanying case of Goldfish (*In re Goldfish Restaurant, Inc.,* Case No.17-22628-rdd)[1] is to continue to use the Premises and TD Bank's Collateral[2] while ignoring obligations to TD Bank which have been fully and finally determined in the State Court Judgment.

2. Despite more than four years of negotiations, the execution of multiple forbearance agreements and the entry of the State Court Judgment, when TD Bank had finally moved toward enforcing its rights with respect to the Loan Documents, TSMC and Goldfish filed bankruptcy petitions.

3. In May 2016, after three years of efforts to negotiate a consensual resolution of the Debtor's defaults under the Loan Documents, the Debtor, Goldfish, Athanasios Stratigakis ("**Stratigakis**"), Michael Casarella, Jr. ("**Casarella**") and TD Bank executed the Forbearance Agreement, pursuant to which (i) the Debtor and Goldfish executed Confessions of Judgment, and (ii) the Debtor, Goldfish, Stratigakis and Casarella agreed to make monthly payments to TD Bank and cause the Obligations to be paid in full on or before November 28, 2016. These parties

---

[1] Both TSMC and the Debtor are owned by Stratigakis and Casarella.
[2] All capitalized terms not otherwise defined herein shall have the meaning given them in the Austin Affidavit and the Teitelbaum Declaration (both as defined below).

1

immediately defaulted in making the monthly payments required under the Forbearance Agreement. As a result, TD Bank commenced the Second Foreclosure Action, and, relying upon the Confessions of Judgment and terms of the Forbearance Agreement, obtained the State Court Judgment against the Debtor, Goldfish, Stratigakis and Casarella.

4. This bankruptcy case and the bankruptcy case filed by Goldfish[3] were filed as TD Bank was completing the process to notice a sale of the Premises pursuant to the State Court Judgment.

5. Upon information and belief, the Debtor and Goldfish continue to operate a restaurant on the Premises and use TD Bank's Collateral, including the Premises, the Lease for the Premises, and the cash receipts of the business, all without any payment to TD Bank on account of the Obligations under the Loan Documents.

6. TD Bank is not adequately protected against the continued use and diminution of its Collateral. Over the past four years, the Debtor, Goldfish, Stratigakis and Casarella have repeatedly promised to sell the Premises or refinance the Premises for an amount which would pay TD Bank in full. After four years, it is clear that Debtor, Goldfish, Stratigakis and Casarella are unwilling or unable to sell the Premises or refinance the Obligations to repay TD Bank and have been unwilling or unable to pay TD Bank the forbearance payments agreed upon during this time. TD Bank can only conclude that TSMC is unable to make the required payments because Goldfish is not generating sufficient sales or the principals are diverting the receipts to fund another restaurant they jointly own in Westchester, the Stone Manor.

---

[3] Contemporaneously herewith, TD Bank is moving for relief from the automatic stay as against Goldfish in Bankruptcy Case No.17-22628-rdd in order to permit Movant to enforce its state law and contractual rights and remedies as against certain collateral pursuant to, among other things, a confession of judgment executed by Goldfish and a decision and order of the New York State Supreme Court in the State Court Action.

7. For all of the reasons set forth below and in the papers filed herewith, cause exists to modify the automatic stay to permit TD Bank to enforce its state law and contractual rights and remedies as against the Collateral and the Premises, including sale of the Collateral, taking possession and control of the Premises and of all lease and rent payments which may be due under the Lease, proceeding to evict the Debtor from the Premises, and proceeding with the foreclosure of the Premises pursuant to the State Court Judgment; and granting Movant such other and further relief as the Court deems just and proper..

## STATEMENT OF FACTS

8. The Court is respectfully referred to the accompanying affidavit of William A. Austin, dated June 13, 2017 and the Exhibits annexed thereto (the "**Austin Affidavit**") and the accompanying declaration of Jay Teitelbaum, dated June __, 2017 and the Exhibits annexed thereto (the "**Teitelbaum Declaration**"), all as submitted in support of this motion, for the supporting statement of facts.

9. The property which is the subject of this Motion is commercial investment property owned by the Debtor and leased to Goldfish as the sole tenant of the Premises.

10. Goldfish occupies the Premises to operate a restaurant and parking lot for the restaurant. The property is not the Debtor's residence.

**The Note, Mortgage and ALR**

11. On August 12, 2010, Borrower executed and delivered to TD Bank a certain Term Loan Note payable to TD Bank in the original principal amount of Six Hundred Thousand and No/100 Dollars ($600,000.00) (the "**Note**") for the purpose of evidencing a loan made by TD Bank to Borrower on that date (the "**Loan**"). Austin Affidavit, Exhibit A.

3

12. On that same date, Borrower granted TD Bank a first priority mortgage, lien and security interest in and upon the Premises and in and upon the TSMC Personal Property Collateral. The Mortgage identifies TD Bank as the Mortgagee and was recorded with the County Clerk on August 26, 2010. Austin Affidavit, Exhibit B.

13. On that same date, TSMC also executed an ALR in favor of TD Bank. Austin Affidavit, Exhibit C. A copy of the lease referenced in the ALR is attached to the Austin Affidavit as Exhibit C-1.

14. Plaintiff is the owner and holder of the Note, Mortgage, and ALR which are the subject of the Foreclosure Action and the State Court Judgment against the Debtor.

**The Goldfish Guaranty**

15. On August 12, 2010, Goldfish executed a Guaranty of Payment (the "**Goldfish Guaranty**"), in which Goldfish, jointly and severally with Stratigakis, Casarella and TSMC, absolutely and unconditionally guaranteed all of the obligations under the Note and Mortgage, including any deficiency judgment which might result following a foreclosure sale in an action to enforce the Note and Mortgage. Austin Affidavit, Exhibit D.

16. Goldfish also executed and delivered a certain Security Agreement dated August 12, 2010 in favor of TD Bank (the "**Goldfish Security Agreement**"), pursuant to which Goldfish granted to TD Bank a first priority lien and security interest in and upon all Goldfish's "present and future right, title and interest in and to any and all of the personal property of Guarantor whether such property is now existing or hereafter created, acquired or arising and wherever located from time to time, including, without limitation: (i) accounts; (ii) chattel paper; (iii) goods; (iv) inventory; (v) equipment; (vi) fixtures; (vii) farm products; (viii) instruments; (ix) investment property; (x) documents; (xi) commercial tort claims; (xii) deposit accounts;

(xiii) letter-of-credit rights; (xiv) general intangibles; (xv) supporting obligations; and (xvi) proceeds and products of the foregoing" (the "**Goldfish Collateral**"). Austin Affidavit, Exhibit E.[4,5]

**The Defaults and the Foreclosure Actions**

17. In October 2013, certain defaults under the Loan Documents occurred, including but not limited to failure on the part of TSMC to make payments required under the Note and Mortgage.

18. From October 2013 through April 2015, TD Bank attempted to work with Goldfish and the other Obligors to remedy the defaults, including by entering into a series of letter forbearance agreements. Austin Affidavit, Exhibits I-L.

19. Debtor, Goldfish, Casarella and Stratigakis defaulted in their obligations by, among other things, failing to make the required payments under the agreements; as a result, TD Bank filed a foreclosure action naming each of the Debtor, Goldfish, Casarella and Stratigakis.

20. In connection with a settlement and dismissal without prejudice of the First Foreclosure Action, Debtor, Goldfish, Casarella and Stratigakis executed a Forbearance Agreement in May 2016, and Debtor and Goldfish executed and delivered to TD Bank certain Confessions of Judgment as part thereof. Austin Affidavit, Exhibit M.

21. In the Forbearance Agreement, Debtor, Goldfish, Casarella and Stratigakis, among other things, (i) acknowledge that they are in default of their obligations under the Loan

---

[4] On August 19, 2010, as authorized by the Goldfish Guaranty and the Goldfish Security Agreement, TD Bank caused a UCC-1 Financing Statement to be filed with the State of New York, Department of State identifying Goldfish as the Debtor, TD Bank as the Secured Party, and the Goldfish Collateral as the collateral. TD Bank continued the filing on June 2, 2015. Austin Affidavit, Exhibit F.

[5] Stratigakis and Casarella also executed Guaranties of Payment in favor of TD Bank. Austin Affidavit, Exhibits G and H.

Documents, (ii) acknowledge that the obligations set forth therein were due and owing under said Loan Documents without offset, counterclaim or defense, (iii) agree to pay all legal fees and expenses of TD Bank incurred between the date of the Forbearance Agreement and payment and satisfaction in full of the loan obligations, and (iv) agreed to a schedule of payments to be made during the forbearance period (the "**Forbearance Payments**"). Austin Affidavit, Exhibit M.

22. In the Forbearance Agreement, Debtor, Goldfish, Casarella and Stratigakis also acknowledge and confirm that the loan obligations are duly secured by all collateral mentioned in the Loan Documents and are matured and due without defense, offset, claim or counterclaim and unconditionally waive and release any defenses, objections, affirmative defenses, counterclaims and objections that could be asserted in a new foreclosure action. Austin Affidavit, Exhibit M.

23. The Debtor, Goldfish, Casarella and Stratigakis also acknowledged that the entry of the Confessions of Judgment in a new foreclosure action "constitute the express written consent of [the Debtor and Goldfish] to the entry of such judgments and orders in the New Action as may be necessary for the Bank to enforce its Reserved Rights against them, and against the Premises and the Goldfish Collateral, including, but not limited to the rights to (i) the entry of a judgment of foreclosure and sale, (ii) the entry of orders directing a sale of the Premises, (iii) the entry of deficiency judgments against them in an amount to be computed, and (iv) the appointment of referees and/or receivers." Austin Affidavit, Exhibit M.

24. By June 2016, Debtor, Goldfish, Casarella and Stratigakis had defaulted under the terms of the Forbearance Agreement by, among other things, failing to make the required Forbearance Payments.

25. As a result, on or about October 13, 2016, TD Bank commenced the Second Foreclosure Action against the Debtor, Goldfish, Casarella and Stratigakis.

26. No answer to the complaint in the Second Foreclosure Action was interposed. Indeed, pursuant to the Forbearance Agreement and the Confessions of Judgment, Debtor, Goldfish, Casarella and Stratigakis unconditionally waived their right to oppose the relief sought therein.

27. The Debtor, Goldfish, Casarella and Stratigakis did appear by counsel in State Court at the Preliminary Conference to oppose TD Bank's request that the State Court appoint a receiver.

28. As a compromise, the parties agreed to biweekly reports of the financial condition of the entities and the turnover of any profits via So-Ordered Stipulation of the State Court. Teitelbaum Declaration, Exhibit 3.

29. The Debtor, Goldfish, Casarella and Stratigakis defaulted in their obligations under the So-Ordered Stipulation. Teitelbaum Declaration, Exhibit 4.

30. On or about December 21, 2016, TD Bank filed the MSJ, which was not opposed.

31. The State Court entered a judgment against the Debtor, Goldfish, Casarella and Stratigakis on February 14, 2017. Austin Affidavit, Exhibit N.

32. A referee was appointed to conduct a sale of the Premises. Following the entry of an order authorizing the sale of the Premises either as a single lot or multiple lots, the Debtor commenced this case.

**Relief from the Automatic Stay Is Appropriate**

33. On May 9, 2017, Debtor filed a Chapter 11 Petition with this Court (ECF Docket No. 1).

34. This Court's Loss Mitigation Program under General Order M-451 is not applicable.

35. Upon information and belief, Goldfish is required to pay rent with respect to the Premises to commonly-owned entity TSMC. Upon information and belief, Debtor and/or commonly-owned entity Goldfish are diverting such funds to operate another restaurant in Westchester, owned by Stratigakis and Casarella, the Stone Manor. Despite TD Bank's right to all accounts of Goldfish, Goldfish has not turned over any funds to TD Bank or accounted for such funds.

36. Indeed, in order to protect its interest in the Premises, TD Bank recently paid $86,419.10 in past due property taxes owed by TSMC on the Premises.

37. Upon information and belief, TSMC and Goldfish are concealing income and assets from the Court and/or from TD Bank to fund the operations of the Stone Manor restaurant or other enterprises of Stratigakis and Casarella.

38. Indeed, Goldfish's schedules filed as ECF Docket No. 9 in the Goldfish bankruptcy action are materially false and misleading in at least the following respects: (i) the Schedules do not identify TD Bank as a secured or unsecured creditor; (ii) Summary of Assets and Liabilities, Part 9 does not identify the lease of the Premises from TSMC; and (iii) Statement of Financial Affairs, Part 3, does not identify the State Court Action or Judgment.

39. Further, Goldfish's Schedule A admits that Goldfish has no cash and $60,000 in assets, excluding the value of the undisclosed lease for the Premises

40. The Debtor cannot continue to use TD Bank's collateral without providing adequate protection. The Debtor's promises and predictions that the Premises can be sold and/or

that financing can be obtained to repay TD Bank have been proven by the passage of the last four years to be hollow and false.

42. All defenses, offsets, and counterclaims to the claims of TD Bank under the Loan Documents and the Forbearance Agreement have been waived and finally determined by the admissions of the Debtor and the State Court Judgment.

42. The Debtor's Schedule A admits that the Debtor has no cash, and as evidenced by the Debtor's Rule 1007 Affidavit, Goldfish has not paid its rent for over two years. The Debtor has no ability to make payments on account of the Loan as adequate protection.

43. The filing of this case is for the sole purpose of delay, which should not be condoned by this Court.

44. As set forth herein and in the accompanying memorandum of law, cause exists under Bankruptcy Code §§ 362(d)(1) and/or (2) to vacate the stay with respect to the Premises and allow TD Bank to conclude its enforcement of the State Court Judgment under state law.

**CONCLUSION**

For the reasons set forth above, in the accompanying Austin Affidavit, in the accompanying Teitelbaum Declaration and in the Memorandum of Law, Movant respectfully requests that this Court enter an order:

(i) modifying and terminating the automatic stay so that Movant or any assignee can proceed to enforce its rights as against the Premises under applicable state law, including but not limited to taking possession and control of the Premises and of all lease and rent payments which may be due under the Lease, proceeding to evict the Debtor from the Premises and sale of the Premises; and

(ii) granting Movant such other and further relief as the Court deems just and proper, including, but not limited to, the fees and costs of this Motion.

Dated: June 13, 2017

**TEITELBAUM LAW GROUP, LLC**
*Attorneys for TD Bank, N.A.*

By: /s/ Jay Teitelbaum
Jay Teitelbaum, Esq.
1 Barker Avenue, Third Floor
White Plains, New York 10601
Tel: (914) 437-7670
Email: jteitelbaum@tblawllp.com